## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

JOSHUA ISAIAH MONEY.,    )
                                 )
    Plaintiff,          )
                                 )
v.                       )        CV423-243
                                 )
C.E.R.T. SGT. STEFFAN    )
GIBBS, *et al.*,          )
                                 )
    Defendants.       )

## <u>ORDER</u>

*Pro se* plaintiff Joshua Isaiah Money filed this case against Defendant Gibbs, a guard at Coastal State Prison, and multiple unidentified prison employees. *See generally* doc. 1. The Court granted him leave to proceed *in forma pauperis*, doc. 4, and he returned the required forms, *see* docs. 6 & 7. The Court, therefore, proceeds to screen his Complaint. 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

1

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Money is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## I. Factual Allegations

Money alleges that he arrived at Coastal State Prison in 2022. *See* doc. 1 at 5. After processing, he requested that Gibbs take him to the "segregation building because prison employees had previously committed crimes against [him] and [he] did not feel safe in general population dorms." *Id.* Gibbs refused, apparently because Money "had to go to the general population dorm [he] had just been assigned to during intake for new arrivals . . . ." *Id.* Money contends that he "knew [he] had a right to be segregated if there was a valid threat to [his] safety," and so he removed himself and his property to a "metal cage" and reiterated his requested to go to a segregated dorm. *Id.* at 12. While he was waiting, prison staff "locked [him] in the metal cage." *Id.* When Gibbs returned and discovered Money in the "cage," he immediately

sprayed Money with pepper spray.  *Id.*  Gibbs then secured Money's hands in handcuffs and removed him from the "cage."  *Id.*

As Gibbs and Money were walking, they encountered "a white male that was in slacks and a button shirt," who instructed Gibbs to spray Money again.  Doc. 1 at 12.  Money does not allege that Gibbs sprayed him again in response to that instruction.  *See id.*  Money alleges that, at the time of the instruction, he was "handcuffed, calm, and allowing defendant Gibbs to lead [him] wherever he was taking [him]."  *Id.* When Money realized that Gibbs was taking him to "a general population dorm and the dorm [he] had been assigned to upon [his] arrival," he "pulled away . . . and grabbed on to a chain link fence . . . ."  *Id.*  When Money would not let go, Gibbs sprayed him again.  *Id.* at 12-13.  Money eventually let go of the fence and Gibbs escorted him to one of the dorms. *Id.* at 13.

When Money, Gibbs, and an unidentified female officer arrived at a particular cell, Gibbs instructed one of the four inmates in the cell to move his belongings.  Doc. 1 at 13.  After the inmate left, Gibbs told the female officer that the other inmates in the cell were his "goons" who "take care of people for [him] when [he has] a problem."  *Id.*  Money

alleges that Gibbs instructed the other inmates in the cell to "kill him." *Id.* Gibbs also refused to allow Money to decontaminate from the pepper spray. *Id.* The other inmates in the cell discussed whether they would carry out Gibbs' orders. *Id.* at 14. Ultimately, they attacked Money. *Id.* Unidentified officers arrived and refused to move Money out of the cell. *Id.* He was not moved until the next morning. *Id.* He alleges that he was not allowed to fully decontaminate for six days. *Id.* at 15.

## II.    Anonymous Defendants

As discussed below, Money has likely sufficiently alleged claims against defendants whose identities he does not know. This Circuit "generally forbids fictitious-party pleading—that is, claims against fictitious or non-existent parties are usually dismissed." *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019) (citing *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). There is a "limited exception" to the rule "when the plaintiff's description of the defendant is so specific as to make the fictious name, at the very worst, surplusage." *Id.* (internal quotations and citation omitted). "[I]n the context of prisoner lawsuits, where plaintiffs encounter difficulties in identifying the precise defendants, an appropriate alternative to dismissal may be .

. . to permit the plaintiff to obtain their identit[ies] through discovery." *Scott v. Miami Dade Cnty.*, 2023 WL 4196925, at *7 (11th Cir. June 27, 2023) (citing *Brown v. Sikes*, 212 F.3d 1205, 1209 n. 4 (11th Cir. 2000) (internal quotations omitted)).

Although Money's descriptions of the various unidentified defendants are not sufficiently clear for the Court to authorize service upon any of them, they are sufficiently indicative that he may ascertain their identities through discovery. Since, as discussed below, service upon Gibbs is appropriate, the Court will not dismiss the anonymous defendants at this time. However, Money is advised that he remains responsible for identifying defendants and, if appropriate, amending his pleadings so that they can be timely served. *Cf. Temple v. Cox*, 2020 WL 6566177, at *10 (S.D. Ga. Nov. 9, 2020); *Reid v. Hasty*, 2010 WL 11647079, at *6 (N.D. Ga. Jan. 7, 2010).

## III.   Excessive Force

It is well-settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v.*

*Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019).   "In considering an Eighth Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."   *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted).   Moreover, officers who witness excessive force and fail to intervene may be liable for their failure.   *See, e.g., Jackson v. Catanzariti*, 2019 WL 4874809, at *11 (S.D. Ga. Oct. 2, 2019) (discussing law applicable to failure to intervene in excessive force cases).   While Money's allegations do not establish any defendant's culpable intent, they are sufficient to be served, at least upon defendant Gibbs.   It also appears that Money has alleged sufficient facts to support claims that several unidentified defendants failed to intervene to stop Gibbs.   Definitive determination of the sufficiency of any such claim will be made if and when Money identifies those individuals, as discussed above.

## IV.   Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted).   "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.   "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Moreover, the threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Id.* (internal quotation marks and citation omitted).   Although the authority analyzing allegations of a guard's solicitation of other inmates to attack a plaintiff is limited, courts have applied *Farmer*'s deliberate indifference framework. *See Garcia v. Ojeda*, 2010 WL 5173147, at \*5-\*6 (E.D. Cal. Dec. 14, 2010) ("[A] rational trier of fact could conclude that it is not constitutionally acceptable for a

correctional officer to ask inmates to attack a particular prisoner . . . ."); *see also Grant v. Heisol*, 2017 WL 1364664 at \*5 (E.D. Cal. Apr. 14, 2017) (acknowledging that "Plaintiff's allegations that inmates were recruited at various points to threaten and intimidate Plaintiff could give rise to a claim" under *Farmer*'s deliberate indifference analysis); *Joseph v. Parciasepe*, 2015 WL 3869676, at \*7 (E.D. Cal. June 23, 2015) ("Soliciting another inmate to assault plaintiff would not only make [defendant] aware of a substantial risk of harm to plaintiff's safety, it would mean he was actively attempting to create an excessive risk to plaintiff's safety . . . ."); *Lyons v. Beard*, 2011 WL 398273, at \*12 (M.D. Pa. Jan. 10, 2011) (allegation of corrections officers' "actively soliciting inmates to assault" the plaintiff "plainly make out an Eighth Amendment violation").   Given that standard, the Court is satisfied that Money has stated a failure-to-protect claim against Gibbs based on his allegations that Gibbs placed him in a cell with other inmates who Gibbs explicitly directed to attack him.

## V.    Deliberate Indifference to Serious Medical Needs

Money's allegations that he was not provided with medical care after he was pepper sprayed, or allowed to decontaminate, implicate a

deliberate indifference claim. To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . " *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 33 F.3d 1325, 1331 (11th Cir. 2008).

To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Youmans v. Gagnon*, 62 F.3d 557, 564 (11th Cir. 2010). The Eleventh Circuit has recognized "that exposure to pepper spray without adequate decontamination can constitute a serious medical need." *Barcelona v. Rodriguez*, 847 F. App'x 739, 742 (11th Cir. 2021). Money's allegations that various defendants were aware of his ongoing contamination by the

pepper spray and failed to permit him to decontaminate is sufficient to allege their respective deliberate indifference.    Taking Money's allegation that he was not provided with medical care or an opportunity to decontaminate after being pepper sprayed as true, therefore, he has alleged at least one[1] deliberate indifference claim against Gibbs and, perhaps, several anonymous defendants.   As stated above, definitive determination of the sufficiency of any claim against the unidentified defendants will be made if and when Money identifies them.

Since the Court approves for service Money's excessive force, failure to protect, and deliberate indifference claims against Gibbs, a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order shall be served upon Gibbs by the United States Marshal without prepayment of cost.   The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff.    The Court also provides the following instructions to the parties that will apply to the remainder of this action.

---

[1]   Whether Money has sufficiently alleged deliberate indifference to any of the other injuries he allegedly suffered, including the "scrapes, cuts, and bruises from the assault," doc. 1 at 16, can be addressed upon service or if and when the relevant defendants are identified.

## INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.5. A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d). Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a)(2). Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local R. 26.1. Defendants shall ensure all

discovery, including Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness in order and word-for-word during the deposition. Fed. R. Civ. P. 30(c). Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## INSTRUCTIONS TO PLAINTIFF

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the

Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).   Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.   Fed. R. Civ. P. 5.   "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."   Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.   For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery.   *See generally* Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37.   The discovery period in this case will expire 140 days after the filing of the last answer.   Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period.   Id.   Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.   Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.   See Fed. R. Civ. P. 33.   Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant.   Interrogatories are not to contain more than 25 questions.   Fed. R. Civ. P. 33(a).   If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.   If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.   Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.   If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will**

**authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press this case forward, the court may dismiss it for failure to prosecute.   Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.   Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.   A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order.   A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## <u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in

this case.   That burden cannot be met by reliance on the conclusory allegations contained within the complaint.   If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.   If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

The Court must also assess Money's filing fee.   *See* 28 U.S.C. § 1915(b).   Plaintiff's prisoner trust fund account statement reflects no average monthly deposits to or balance in his prisoner trust account. Doc. 6 at 1.   Based upon his furnished information, he does not owe an initial partial filing fee.   *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.   In the event plaintiff is transferred to another

institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.   The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

      **SO ORDERED,** this <u>18th</u> day of October, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
