## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| JOSHUA ISAIAH MONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-243 |
| | ) | |
| C.E.R.T. SGT. STEFFAN | ) | |
| GIBBS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Joshua Isaiah Money filed this 42 U.S.C. § 1983 case alleging excessive force, failure to protect, and deliberate indifference claims against Defendant Steffan Gibbs and other anonymous defendants. *See* doc. 8 at 10. Gibbs has answered. Doc. 15. The Court granted Money's Motion to Amend the operative Complaint. Doc. 49 at 5. Money has filed his Amended Complaint. Doc. 55. As anticipated by the Court's prior Order, that Amended Complaint must be screened. *See* doc. 49 at 6; *see also* 28 U.S.C. § 1915A. In addition to screening the Amended Complaint, the Court must also address Money's request for preliminary injunctive relief. Doc. 56. Finally, the Court must address his motion requesting this case be referred for mediation. Doc. 67.

1

As summarized in the Court's Order screening Money's original Complaint, he alleges that he was subjected to excessive force, and that Coastal State Prison employees and officials failed to protect him and were deliberately indifferent to his serious medical needs.  *See* doc. 8 at 2-10.  In part, Money's Amended Complaint simply identifies defendants who were previously anonymous.  *See, e.g.,* doc. 55 at 2-3, 12.  However, because the Amended Complaint supersedes the original, the Court discusses its allegations independently from its prior analysis.  *See, e.g., Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007).

As before, the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), so allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).   Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed.  *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Money's Amended Complaint alleges that he arrived at Coastal State Prison in July 2022. Doc. 55 at 5. Upon arrival, Defendant Gibbs informed Money that he was assigned to a general population dorm. *Id.* Money told Gibbs that he wanted to be assigned to "a segregated housing unit because prison staff had previously committed crimes against Money and Money did not feel safe in general population dorms." *Id.* at 12. Gibbs refused Money's request. *Id.* When he refused to comply with instructions to go to his assigned dorm, an unidentified officer locked him in a "chain-link cage." *Id.* When Gibbs returned and discovered Money in the "cage," he sprayed Money with pepper spray. *Id.* As Money was escorted past Defendant Glenn, Glenn instructed Gibbs to spray Money again. *Id.* However, there is no allegation that Gibbs did spray Money again. *Id.* at 12-13. Money also alleges that, as Gibbs was escorting him away, he spoke to other prison employees giving Money the impression that he would be placed in a cell with dangerous inmates. *Id.* at 13.

Money then alleges that he believed Gibbs was escorting him to a general population dorm. Doc. 1 at 13. Given his belief that he should be in segregated confinement, he "grabbed onto a chain-link fence . . . and began yelling as loud as he could . . . ." *Id.* When he refused to let go of

the fence, Gibbs pepper sprayed him a second time. *Id.* Money then let go of the fence. *Id.* He alleges that he was then subjected to unspecified "excessive force" by Gibbs, Glenn, and Gillison which caused "scrapes, cuts, and abrasions." *Id.*; *see also id.* at 3, 16 (identifying the officer who declined to intervene and participated in the "excessive force" as "Gillison").[1] He was then escorted to a segregated dorm. *Id.* He alleges that Defendant Sheffield, a licensed practical nurse ("LPN"), was responsible for providing medical care, but "completely refused to provide Money with medical care and decontamination assistance . . . ." *Id.*

Once inside the dorm, Money was taken to a four-man cell by Gibbs and Defendant Fasion. Doc. 55 at 13. The cell was already fully occupied. *Id.* Gibbs instructed one of the occupants to collect his belongings to move to another cell. *Id.* While they were waiting, Gibbs refused Money's request for medical care and decontamination from the pepper spray. *Id.* He then alleges that Gibbs expressly instructed the inmates remaining in the cell to "kill [Money]." *Id.* Fasion allegedly heard Money's request for medical care and decontamination and did not intervene in Gibbs'

---

[1] Given that Money does not list a separate Defendant "Gillis" in either the caption of his Amended Complaint or in the separate list of defendants, *see* doc. 55 at 1, 3, 12, the Court assumes the reference to "Gillis" is a mistake. *See* doc. 55 at 13. The Court, therefore, refers exclusively to Defendant Gillison below.

refusal to provide them.  *Id.*  Fasion also allegedly heard Gibbs'

instruction to the inmates remining in the cell to harm Money and, again,

did not intervene.  *Id.*  Once Money was left in the cell, the other inmates

discussed whether they would comply with Gibbs' "order."  *Id.*  They

assaulted him and he remained in the cell until the next morning when

another officer moved him to a different cell.  *Id.* at 14.  Money alleges

that, when he was moving to the new cell, he observed several vacant

cells in the dorm.  *Id.*  The anonymous officer who moved Money again

refused his requests for medical care and decontamination.[2]  *Id.*  Money

was transferred out of Coastal State Prison in July 2022.  *Id.* at 15.

## I.    Violation of Internal Policies

Money alleges that Gibbs "failed to follow GDC standard operating

procedures and the Board of Corrections [sic] Rules and Regulations

mandatory incident reporting policies," when he failed to file a

disciplinary report related to the events at issue.  *See* doc. 55 at 15.  To

the extent that those allegations implicate Money's contention that any

---

[2]  Money's Amended Complaint includes additional statements concerning the legal
implications of his allegations and the quality of proof he plans to introduce.  *See* doc.
55 at 15.  However, "the tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678
(citation omitted).  The quality of proof of Money's claims, even assuming his
assessment of it were accurate, is irrelevant at the pleading stage.

violation of internal prison or state administrative polices or procedures states an independent claim, they do not. Violations of internal or administrative polices do not violate due process rights or any other constitutional right. *See, e.g., Malone v. Bailey*, 2020 WL 8172706, at *2 (S.D. Ga. Dec. 22, 2020) ("[A]n allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted." (internal quotation marks and citation omitted)); *Cook-Bey v. Jackson*, 2019 WL 3213718, at *6 (M.D. Ala. June 12, 2019) ("Infringements of agency rules, regulations, policies or procedures do not, without more, amount to constitutional violations," and collecting cases). To the extent that Money asserts any claim arising from the allegation of such violations, it should be **DISMISSED**.

## II.    Dormitory Assignment

Money asserts that the events at issue "denied [him] an opportunity to be properly classified and assigned housing in accordance with [his] segregation, protective custody, and safety needs." Doc. 55 at 17. To the extent that his reference to "safety needs" implicates a failure-to-protect claim, that claim is discussed below. To the extent that Money contends that he has an independent right to a particular dormitory assignment,

6

he is mistaken.  "Simply put, it is well-settled that [a prisoner] has no constitutional right to confinement in a particular prison or dorm of his choosing." *Alverson v. Mills*, 2020 WL 1979570, at *2 (M.D. Ala. Mar. 17, 2020) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)); *see also, e.g., McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988) ("Prisoners have no constitutionally protected liberty interest in remaining in any particular wing of a prison."); *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (prisoner "did not state a due process claim because he has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison."). Money's claim arising out of his classification and dormitory assignment, should, therefore, be **DISMISSED**.

## III.  Excessive Force

It is well-settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v.*

*Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019). "In considering an Eighth Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted). Moreover, officers who witness excessive force and fail to intervene may be liable for their failure. *See, e.g., Jackson v. Catanzariti*, 2019 WL 4874809, at *11 (S.D. Ga. Oct. 2, 2019) (discussing law applicable to failure to intervene in excessive force cases). While Money's allegations do not establish any defendant's culpable intent, they are sufficient to be served, at least upon defendant Gibbs. Money has also alleged sufficient facts to support an excessive force claim against Defendants Glenn and Gillison, for their alleged failure to intervene.

## IV.  Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted). "It is not, however, every injury

suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Moreover, the threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Id.* (internal quotation marks and citation omitted). Although the authority analyzing allegations of a guard's solicitation of other inmates to attack a plaintiff is limited, courts have applied *Farmer*'s deliberate indifference framework. *See Garcia v. Ojeda*, 2010 WL 5173147, at *5-*6 (E.D. Cal. Dec. 14, 2010) ("[A] rational trier of fact could conclude that it is not constitutionally acceptable for a correctional officer to ask inmates to attack a particular prisoner . . . ."); *see also Grant v. Heisol*, 2017 WL 1364664 at *5 (E.D. Cal. Apr. 14, 2017) (acknowledging that "Plaintiff's allegations that inmates were recruited at various points to threaten and intimidate Plaintiff could give rise to a

claim" under *Farmer*'s deliberate indifference analysis); *Joseph v. Parciasepe*, 2015 WL 3869676, at *7 (E.D. Cal. June 23, 2015) ("Soliciting another inmate to assault plaintiff would not only make [defendant] aware of a substantial risk of harm to plaintiff's safety, it would mean he was actively attempting to create an excessive risk to plaintiff's safety . . . ."); *Lyons v. Beard*, 2011 WL 398273, at *12 (M.D. Pa. Jan. 10, 2011) (allegation of corrections officers' "actively soliciting inmates to assault" the plaintiff "plainly make out an Eighth Amendment violation"). Given that standard, the Court is satisfied that Money has stated a failure-to-protect claim against Gibbs and Fasion based on his allegations that Gibbs placed him in a cell with other inmates who Gibbs explicitly directed to attack him and Fasion did not intervene.

## V.    Medical Care

Money's allegations that he was not provided with medical care after he was pepper sprayed, or allowed to decontaminate, implicate a deliberate indifference claim. To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This requires that (1) the prisoner suffered a sufficiently serious

medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Whether a serious medical need existed is an objective standard. *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

To allege deliberate indifference, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm," and that the defendant "acted with subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). The Eleventh Circuit has recognized "that exposure to pepper spray without adequate decontamination can constitute a serious medical need." *Barcelona v. Rodriguez*, 847 F. App'x 739, 742 (11th Cir. 2021). Money's allegations that various defendants were aware of his ongoing contamination by the pepper spray and failed to permit him to decontaminate is sufficient to allege their respective deliberate indifference. Taking Money's allegation that he was not provided with medical care or an opportunity to

decontaminate after being pepper sprayed as true, therefore, he has alleged deliberate indifference claims against Gibbs and Fasion. Again, his allegations against the unidentified "correctional officers," CERT Officer, and "Jane Doe" who refused to provide medical care or decontamination, might support a claim, subject to identification of those individuals.[3] *See* doc. 55 at 14.

His asserted claim against "LPN Sheffield" and "Jane Doe No. 2," fails, however, because it is wholly conclusory. His only allegation concerning Sheffield is that he or she "was responsible for providing Money medical care and decontamination assistance and completely refused to provide Money with medical care and decontamination

---

[3] As the Court previously explained, this Circuit "generally forbids fictitious-party pleading—that is, claims against fictitious or non-existent parties are usually dismissed." *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019) (citing *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). There is a "limited exception" to the rule "when the plaintiff's description of the defendant is so specific as to make the fictious name, at the very worst, surplusage." *Id.* (internal quotations and citation omitted). "[I]n the context of prisoner lawsuits, where plaintiffs encounter difficulties in identifying the precise defendants, an appropriate alternative to dismissal may be . . . to permit the plaintiff to obtain their identit[ies] through discovery." *Scott v. Miami Dade Cnty.*, 2023 WL 4196925, at *7 (11th Cir. June 27, 2023) (citing *Brown v. Sikes*, 212 F.3d 1205, 1209 n. 4 (11th Cir. 2000) (internal quotations omitted))." Doc. 8 at 4-5. Again, the descriptions of the anonymous defendants are too vague to authorize service. However, as before, the Court will not recommend dismissal to afford Money an opportunity to identify them in discovery and, if appropriate, further amend his pleading so that they can be timely served. *Cf. Temple v. Cox*, 2020 WL 6566177, at *10 (S.D. Ga. Nov. 9, 2020); *Reid v. Hasty*, 2010 WL 11647079, at *6 (N.D. Ga. Jan. 7, 2010).

assistance, leading to further injuries to Money." Doc. 55 at 13. His only allegation against Jane Doe No. 2 is that, at some time or times between July 22 and July 26, 2022, he "ask[ed] her to allow him to fully decontaminate from the OC and that he needed medical care for the injuries he suffered due to CSP staff misconduct." *Id.* at 14. Those claims amount to no more than "an unadorned, the-defendant-unlawfully-harmed-me-accusation," offering mere "labels and conclusions," "tender[ing] naked assertions devoid of further factual enhancement." *Iqbal*, 556 at 678 (internal quotation marks, alterations, and citations omitted). Money's deliberate-indifference claim against Sheffield and Jane Doe No. 2 should, therefore, be **DISMISSED**.

## VI.    First Amendment Retaliation

"To prevail on a [First Amendment] retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations and alterations

omitted); *see also Smith v. Fla. Dep't of Corr.,* 713 F.3d 1059, 1063 (11th Cir. 2013) (identifying elements for a retaliation claim).  Recognizing "both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with . . . particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (Calabresi, J.), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *see also, e.g., Skinner v. Sproul*, 2015 WL 196191, at *7 (M.D. Ga. Jan. 14, 2015).

Money's First Amendment retaliation claim alleges that Defendants Gibbs and Glenn retaliated against him for his complaints about his dorm assignment and his demands to be placed in segregated confinement. *See* doc. 55 at 12-13, 17.  He alleges that after making his verbal demand, he disobeyed Gibbs' instruction to go to the general population dorm. *Id.* at 12.  When he was confronted by another officer about why he was loitering, he told her, and she locked him in the "chain-link cage." *Id.*  When Gibbs returned and discovered Money in the "cage," he sprayed him with OC spray, as discussed above. *Id.*  His allegation that Gibbs' deployment of force was motivated by his verbal complaints,

and not his noncompliance, is wholly conclusory. *See id.* at 12-13. He alleges that Glenn must have conspired or colluded in the retaliation because (1) he saw no other prison employees who witnessed Gibbs' use of the spray and he did not observe Glenn report his use of the spray, (2) he believes that the location of the cage was out of Glenn's line of sight from where he subsequently encountered Glenn, so (3) "there was no possible way Glenn could have known Gibbs had used OC against money unless Glenn conspired with Gibbs to use excessive force against Money . . . ." *Id.* at 13. He contends "[a]ny other explanation of this situation would defy logic and the principles of the laws of physics." *Id.*

Money's First Amendment retaliation claims fail. First, it is not clear that his verbal complaints about his housing assignment are protected speech. Courts have expressed skepticism that verbal complaints, as opposed to formal grievances, are constitutionally protected speech. *See, e.g., Burton v. Hair*, 2023 WL 8723686, at *7 (N.D. Fla. Sept. 28, 2023); *Daker v. Head*, 2019 WL 11005452, at *19 (S.D. Ga. Dec. 20, 2019) ("[V]erbal complaints by inmates, without more, are likely not constitutionally-protected speech."). Moreover, Money's attempt to infer a retaliatory motive or conspiracy is purely speculative. *See* doc. 55

at 13.  His inferences are not sufficient to support his claim.  *See, e.g.,*
*Smith v. Fla. Dep't of Corrs.*, 375 F. App'x 905, 911 (11th Cir. 2010).  Even
supposing that Money's inference of Glenn's prior knowledge of the use
of force were correct—and given that deployment of a chemical agent
might create both noise and smells which could travel around corners,
it's not clear that it is—there is no basis to infer that such a conspiracy
was motivated by Money's verbal complaints.  Money's First Amendment
retaliation claim should, therefore, be **DISMISSED**.

## VII.  State Law Tort Claims

Money asserts that his allegations against Defendant Gibbs and
Glenn also support claims, under Georgia law, for "assault, battery,
negligence, intentional infliction of emotional distress, and false arrest."
Doc. 55 at 17.  He expressly asserts that this Court has supplemental
jurisdiction over those claims.  *Id.*  The Court is skeptical whether he
alleges sufficient facts to support any or all of those claims, and, even if
he did, whether Gibbs and Glenn enjoy immunity against those claims
under the Georgia Tort Claims Act, O.C.G.A. §§5-21-20, *et seq.*.  However,
given that the Court has found that several of Money's claims against
Gibbs and Glenn are sufficient for service and the application of the

Georgia Tort Claims Act is not "apparent on the face of the complaint," *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020), the Court will permit the state law claims against Gibbs and Glenn to be served.

## VIII. Motion for Preliminary Injunction

Money has moved for a preliminary injunction and temporary restraining order requiring unspecified individuals to take numerous actions including, providing him "access to psychiatric medications such as stimulants," "adequate medical care," "due process" prior to changes in his housing assignments, a "special diet," access to legal research materials, "insect and rodent infestation free living quarters," access to Prison Rape Elimination Act ("PREA") services, special processing of his mail, access to "law enforcement agencies," access to personal hygiene and cleaning products, replacement light bulbs in his cell, multiple changes to available facilities, requiring "staff responses in writing," "access to a telephone on a daily basis to handle important personal business[, including] access to hot lines and toll free numbers," and email access. Doc. 56 at 1-5. Defendant Gibbs has responded and points out that "Plaintiff is not asking the Court to order [him] to take, or refrain

from taking, any particular action." Doc. 66 at 3. Since the requested injunctive relief would, necessarily, be directed to non-parties, this Court lacks jurisdiction to provide it. *Id.* He also argues that the Motion fails to satisfy the requirements for preliminary injunctive relief. *Id.* at 4-6. Finally, he argues that the requested relief is barred by the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A). *Id.* at 6-8. Since the Court agrees that it lacks jurisdiction to issue the requested injunctions, as explained below, it expresses no opinion on the remaining arguments.

As the Court previously explained, in response to Money's prior "declaration," implicating requests for injunctive relief, "[b]oth the Supreme Court and the Eleventh Circuit have recognized that it is, generally, error for a district court to enter an injunction against a nonparty." Doc. 63 at 4 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969); *Infant Formula Antitrust Litig., MDL 878 v. Abbott Laboratories*, 72 F.3d 842, 842-43 (11th Cir. 1995)). As other courts have succinctly stated, courts "lack[ ] jurisdiction to issue an injunction against a non-party." *Dipietro v. Lockhart*, 2022 WL 17588299, at *1 (M.D. Ga. July 5, 2022); *see also Hunter v. Harris*, 2017 WL 11428590, at *1 (N.D. Ga. May 2, 2017). Moreover, as the Court also

18

observed, there is no party to this case with any authority over the conditions of Money's confinement at Augusta State Medical Prison. Doc. 63 at 4. Finally, notwithstanding the analysis of Money's Amended Complaint above, none of the defendants he even purports to add would have such authority. *See* doc. 55 at 1-3, 12. There is no plausible way to construe any of Money's requests for injunctive relief such that this Court would have jurisdiction to enter them in this case.[4] His Motion for Preliminary Injunction and Temporary Restraining Order should, therefore, be **DENIED**. Doc. 56.

## IX. Mediation

Money has also requested the Court to "assign the instant case to mediation." Doc. 67 at 1. Money's request appears to be based on his confidence in the "significant merit, strong likelihood of success based on the merit, and simplicity of this case . . . ." *Id.*[5] Since, as discussed above,

---

[4] Money seems to recognize the fact that the unidentified parties he seeks to enjoin do not include any of the named defendants in this case. The fact that his Motion seeks an injunction against Defendant Gibbs "his successors in office, agents and employees and all persons acting in concert or participation with them," doc. 56 at 1, shows that he recognizes that Gibbs, personally, is not the real target of his request.

[5] The Court notes that Money has misconstrued its prior Order denying his request for appointed counsel as a determination of the merits of his case. *See* doc. 67 at 1 (citing doc. 14). The Court's determination that this case presents no "exceptional circumstance," warranting appointed counsel did not, and does not, imply any assessment of the merits of Money's claims. Moreover, although Money does not cite to the Court's prior screenings, the determination that a claim is sufficient for service,

the Court approves for service several of Money's additional claims against parties that have not yet been served, requests for mediation are premature. His Motion is, therefore, **DENIED**. Doc. 67. Once all defendants have been served, Money is free to renew his request. Money is advised, however, the Court would ordinarily only conduct a mediation if the defendants were willing to participate and only after any motions to dismiss had been resolved.

In summary, Money's claims arising from alleged failures to follow internal policies, his claims arising from disputes about his proper dormitory assignment, his claims related to medical care against Defendant Sheffield and "Jane Doe 2," and his First Amendment retaliation claims, should all be **DISMISSED**. His request for preliminary injunctive relief should be **DENIED**. Doc. 56. His request for mediation is **DENIED**. Doc. 67.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all

---

similarly, expresses no opinion on its merits.

parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Since the Court approves for service Money's excessive force claim against Gibbs, Glenn, and Gillison, his failure-to-protect and medical care claims against Gibbs and Fasion, and his state law claims against Gibbs and Glenn, a copy of Plaintiff's Amended Complaint, doc. 55, and a copy of this Order and Report and Recommendations shall be served upon defendants by the United States Marshal on Glenn, Gillison, and Fasion without prepayment of cost.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff.  The Court also

provides the following instructions to the parties that will apply to the remainder of this action.

## INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.5. A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d). Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination. Fed. R. Civ. P. 30(a)(2). Defendants are further advised the Court's standard 140-day discovery period will commence upon the

filing of the last answer. Local R. 26.1. Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness in order and word-for-word during the deposition. Fed. R. Civ. P. 30(c). Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## <u>INSTRUCTIONS TO PLAINTIFF</u>

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the

Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.  Fed. R. Civ. P. 5.  "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."  Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery.  *See generally* Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37.  The discovery period in this case will expire 140 days after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Id.  Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant. Interrogatories are not to contain more than 25 questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will**

**authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press this case forward, the court may dismiss it for failure to prosecute.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.   Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.  A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

# ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That

burden cannot be met by reliance on the conclusory allegations contained within the complaint.  If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.  If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

Since the Court has approved several claims for service upon Defendant Gibbs, and service will be effected electronically, *see* Fed. R. Civ. P. 5(a)(1)(B), (b)(2)(E), the Court's prior Order staying his deadline to respond, pursuant to Rule 15(a)(3), is **LIFTED**.  *See* doc. 49 at 6.  To the extent that Defendant Gibbs seeks modification of his deadline under that Rule, he must file a motion, *see, e.g.,* Fed. R. Civ. P. 6(b).  All discovery in this case remains **STAYED**, pending service upon the newly added defendants.  *See* doc. 63 at 5-6.

**SO ORDERED**, this 19th day of December, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA